Argued May 15; affirmed September 24, 1935

In re Stafford's Estate

PEACHER *v.* WALKER et al.

(49 P. (2d) 379)

*McDannell Brown,* of Portland (C. M. Idleman, of Portland, on the brief), for appellant.

*Fred W. Bronn,* of Portland, for respondents.

ROSSMAN, J. Many of the facts out of which this controversy arose are set forth in *In Re Stafford's Estate,* 145 Or. 510 (28 P. (2d) 840). It will be observed from a reading of that decision that after Alsistress L. Peacher, our present claimant, filed her final report as executrix of her deceased mother's estate, some of the estate's beneficiaries filed objec-

tions to the report in which they claimed that Mrs. Peacher should be required to account for sums of money which they claimed she had handled in a fiduciary capacity for her mother during the last five years of the mother's life. They further claimed that $4,066.16 was due the estate on account of these alleged transactions. Mrs. Peacher denied these charges. Referees were appointed, an audit was made of Mrs. Peacher's records and a report was filed by the auditors. Later, Mrs. Peacher, still claiming that nothing was due from her to the estate, asserted that the estate owed her $3,443.05. When the matter came before the circuit court it sustained the objections of the beneficiaries and refused Mrs. Peacher the privilege of filing her claim. In our previous decision we held that the circuit court was in error. When the cause was remanded Mrs. Peacher filed her claim stating that $2,922.71 was due to her. The beneficiaries filed objections to this claim. The claim is based upon contentions that the claimant used the income from two parcels of real property given to her by her mother during the latter's last illness to pay accounts owed by the mother, and that before this was done the mother assured her that as soon as she was able to do so she would reimburse her for the sums expended in that manner. The beneficiaries denied that any such promise was made, and asserted that when the properties were given to the claimant she agreed to take care of all of her mother's wants.

The evidence is conflicting. We observe that the final account prepared by the executrix, after setting forth all receipts and disbursements, states: "This executrix alleges that all of the claims due said estate have been collected and all of the claims owing to said estate have been paid except as follows: A board bill which this executrix presents herewith in the sum of

$490 on account of board and lodging furnished to nurses during the last sickness of said deceased, amounting to 14 months at the rate of $35 a month. There is also unpaid the compensation of this executrix amounting to $356.95 and a reasonable attorney's fee due John Van Zante for his service herein and the printing of the final notice. All of the other claims against said estate have been paid and said estate has been fully administered upon * * *.'' This report is verified by the oath of Mrs. Peacher. After the afore-mentioned audit had been made Mrs. Peacher filed a further document from which we now quote: ''It appears from the said report that instead of your petitioner having in her possession and retaining funds or money or property belonging to the said estate since the deceased came into your petitioner's home to live, that she has expended and paid out $3,443.05 more than she received; and your petitioner at this time requests and asks this court that the same may be received and filed herein as a claim against the said estate and that the same may be allowed by this court and ordered paid out of the property belonging to the said estate.'' Here we have the inception of the claim with which we are now concerned.

May 5, 1922, the mother, whose health was beginning to fail due to the infirmities of old age, and who was rapidly losing her eyesight, came to Mrs. Peacher's home to live. There she remained until her death on August 14, 1927. The mother owned several parcels of real property in the city of Portland, only two of which were producing substantial incomes. Some of her property was encumbered with mortgages and bonded assessments. Interest, taxes, installments upon principal, etc., imposed a heavy burden of expense upon her. She owned an undivided one-third interest in an im-

proved lot which was producing $45 per month. April 26, 1923, she conveyed her interest to Mrs. Peacher. Another parcel of property which the mother owned was a lot improved with a small store building and encumbered with a mortgage for $2,000. This property was producing an income of about $40 per month. September 18, 1926, she conveyed this property to Mrs. Peacher. Thus, she had parted with the only two properties she owned that were producing substantial revenue. Mrs. Peacher testified that after the conveyances she continued to use the income in discharging her mother's accounts. Some of the accounts paid in this manner were for items personal to the mother, while others, according to Mrs. Peacher, were incidental to the ownership of the property. The total of the accounts thus paid constitutes the basis of the claim with which we are now concerned. The claimant testified that while she was using the income for these purposes her mother promised to reimburse her as soon as she could sell some of her other property. This testimony stands virtually alone. Mrs. Peacher swore that the mother did not effect a sale until shortly before her death, and that at that time her physical condition was such that it was impossible to adjust the accounts. There is evidence in the record which indicates that when the first conveyance was made Mrs. Peacher agreed that, in consideration of it, she would care for her mother through the remaining period of her life.

Without reviewing the evidence further, we express the belief that as Mrs. Peacher used the income from these two properties for the benefit of her mother, she was making gifts to her of the sums thus expended, and, therefore, no debt arose from mother to daughter. We do not believe that Mrs. Peacher could have main-

tained an action against her mother for the sums thus spent. If Mrs. Peacher had not agreed, in consideration of the conveyances, to care for her mother—and she insists that no such agreement was made—then the mother gave to Mrs. Peacher two very valuable gifts. If the two conveyances were gifts, it is not unreasonable to believe that the daughter's use of the income from these properties for the mother's needs were also gifts. Our belief that the expenditures were gifts is supported by the final report which indirectly, if not directly, states that no such claim existed. The claim was not asserted until Mrs. Peacher's brother and sisters filed a claim against her which, as indicated in our previous decision, possessed no merit. After the claim had been made it was altered twice, indicating that even the claimant was uncertain concerning it. If Mrs. Peacher had expected to charge her mother with the income from these two properties she would have kept a sufficient record of her expenditures so that she would not first make the denials found in her final report, and then, upon presenting her claim, alter its amount twice.

The order of the circuit court sustaining the objections to the claim is affirmed. The costs and disbursements of both parties may be treated as expenses of administration as was done in the first appeal.

KELLY, BELT, BEAN, BAILEY and RAND, JJ., concur.

CAMPBELL, C. J., not sitting.